J299-319

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| A.T. CROSS COMPANY<br>and A.T.X. INTERNATIONAL, INC.<br><br>Plaintiffs,<br><br>v.<br><br>PROINNOVATIVE, INC.<br>and EDWARD C. LEAND d/b/a<br>ADVANCED ADVERTISING PRODUCTS<br><br>Defendants. | [redacted] 06 205<br>Civil Action No. |

## COMPLAINT

A.T. Cross Company and A.T.X. International, Inc., through their attorneys, complaining of the defendants, allege as follows:

Nature of the Action Jurisdiction and Venue

1. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., the Lanham Act, 15 U.S.C. § 1051 *et seq*., and common law to redress acts of patent infringement, trade dress infringement and unfair competition of the defendants. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§1331, 1338(a) and 1338(b), and supplemental jurisdiction under 28 U.S.C. § 1367(a). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).

1

The Parties

2. A.T. Cross Company and A.T.X. International, Inc. are corporations, duly organized under the laws of the State of Rhode Island, having a principal place of business at One Albion Road, Lincoln, Rhode Island 02865. A.T.X. International, Inc. is a wholly-owned subsidiary of A.T. Cross Company which is the exclusive licensee of trademarks and patents of A.T.X. International, Inc. in the United States. A.T. Cross Company and A.T.X. International, Inc. are collectively identified herein as "Cross".

3. Upon information and belief, defendant Proinnovative, Inc. is a corporation, organized under the laws of the State of Arizona, having a place of business at 3836 E. Watkins, Phoenix, Arizona 85034.

4. Upon information and belief, defendant Edward C. Leand is an individual, residing in, and a citizen of, the State of Rhode Island, and does business as a sole proprietorship under the name "Advanced Advertising Products" at a place of business located at 3421 Pawtucket Avenue, Riverside, Rhode Island 02915.

## FACTUAL BACKGROUND

5. Established in 1846, Cross is America's oldest manufacturer of fine quality writing instruments. Cross writing instruments are now distributed in more than 140 countries. Cross refillable writing instruments include ball-point pens, mechanical pencils, rolling ball/porous-point pens, gel ink pens, multi-function pens including stylus options for PDAs, electronic pens for tablet PCs, and fountain pens. Cross endeavors to maintain the highest level of product quality and all Cross writing instrument mechanisms are unquestionably guaranteed against mechanical failure, regardless of

age.

6. Because of its reputation for quality and craftsmanship, and its excellent customer service and warranty policies, Cross writing instruments enjoy a valuable commercial goodwill.

7. In 2000, Cross designed and began marketing of a palm-sized, futuristic-looking, elliptical-shaped writing instrument, which it named the Ion® pen. The Ion pen is a compact 3-½ inch pen that slides open and closed. The Ion pen has a forward section and a rear section that slide relative to each other in one direction to extend or expand its length and propel the writing point of the refill through the writing tip for writing and slide relative to each other in an opposite direction to shorten the pen and retract the writing point into the forward section.

8. On August 14, 2001, U.S. Patent No. 6,273,627 ("the '627 patent") was duly and legally issued for an "Expandable Writing Instrument". A copy of the '627 patent is attached hereto as Exhibit A. The '627 patent discloses and claims an expandable writing instrument.

9 A.T.X. International, Inc. is the owner, by assignment, of the entire right, title and interest in and to the '627 patent.

10. A.T.X. International, Inc. has granted an exclusive license to A.T. Cross Company to import, make, offer for sale, and sell writing instruments under the '627 patent.

11. The Ion pen has a unique, arbitrary, non-functional product trade dress comprising: a palm-sized, wide, elliptical-shaped body with a triangulated, tapered

forward section with three circumferentially-spaced flats and a textured surface and a dome-shaped silver writing tip, and a rear section having a smooth surface, the forward and rear sections having a contrasting surface appearance and including a raised, oblong surface on one side with an oval window through which the refill can be viewed. The Ion pen has been marketed in different color combinations. Exhibit B, annexed hereto, hereto displays the Ion pen including a sampling of the colors in which the pen has been marketed.

12. Since October 2000, Cross has sold hundreds of thousands of the Ion pen and its total Ion pen sales worldwide have exceeded $30 million.

13. Cross has extensively advertised the Ion pen. From 2000 to present, the appearance of the Ion pen has been extensively advertised in a variety of advertising channels trade shows, print media, in customer advertisements, via point-of-sale displays and via the Internet.

14. The Cross Ion pen has achieved acclaim due, among other things, to its distinctive and widely recognized trade dress.

15. The trade dress of the Ion pen sets the pen apart from other pens, is not required to compete in the pen market and causes the purchasing public to recognize pens having the trade dress of the Ion pen as a Cross writing instrument.

16. Through its sales and advertising, Cross has acquired goodwill and the public has come to recognize Cross as the source of the Ion pen. The Ion pen trade dress is inherently distinctive or has acquired secondary meaning.

17. The Ion pen is packaged in a curvaceous hard case with eccentric

proportions, specially designed by Cross to provide a package trade dress comprising a unique, distinctive and arbitrary shape that has no utilitarian function and offers no economies of manufacture, and which was adopted to give the Ion pen packaging a distinctive appearance and to indicate source.

18. Cross has distributed hundreds of thousands of Ion pens in the Ion packaging.

19. Cross has exclusively and continuously used the Ion pen packaging trade dress since 2000. As a result of the long use, substantial sales, and extensive promotional activities of Cross, the trade dress of the Ion pen packaging has become well known and widely recognized as indicating the source or origin of Cross products and associated in the minds of consumers as emanating exclusively from Cross.

20. The trade dress of the Ion pen and Ion pen packaging, and the goodwill associated therewith, is of great and incalculable value.

21. Upon information and belief, beginning on or about July 2005, defendant Pro-Innovative has manufactured or caused to be manufactured, and/or imported, advertised, offered for sale and sold a pen under the name the "Snap Pen".

22. Upon information and belief, defendants have been actively marketing, offering to sell, distributing and/or selling the Snap Pen in Rhode Island. The Snap Pen is a reproduction, conspicuous copy and colorable imitation of the plaintiff's Ion pen. A picture of the Ion pen and the Snap Pen side-by-side is shown below.



23. Upon information and belief, the defendants have offered for sale, sold and/or distributed the Snap Pen in packaging which is a reproduction, conspicuous copy and colorable imitation of the Ion packaging. A picture of the Ion packaging and the Snap Pen packaging side-by-side is shown below.



24. Upon information and belief, defendant Leand is defendant Proinnovative's distributor of the Snap Pen in Rhode Island.

25. Upon information and belief, defendant Proinnovative supplied the Snap Pen to defendant Leand in Rhode Island.

26. Upon information and belief, defendant Proinnovative offers for sale the Snap Pen on the Internet to the purchasing public, including persons in Rhode Island.

27. Upon information and belief, defendant Proinnovative distributes nationally, including to persons in Rhode Island, a product catalog which features the Snap Pen.

28. The acts and conduct of defendants as herein averred are without license or permission of plaintiffs.

**COUNT I**

**PATENT INFRINGEMENT**

29. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1- 28 above as though fully set forth herein.

30. Count I is an action for patent infringement.

31. Defendants have committed acts of infringement of the '627 patent, in violation of 35 U.S.C. § 271, by making, importing, using, offering for sale, and/or selling pens and/or actively inducing others to sell pens that fall within the scope of one or more claims of the '627 patent.

32. The infringing acts of defendants have been without express or implied license by plaintiffs, are in violation of plaintiffs' rights, and defendants will continue to infringe the '627 patent unless enjoined by this Court.

33. Upon information and belief, defendant Proinnovative has actively induced the infringement of and/or contributed to the infringement of the '627 patent, in this District and elsewhere in the United States, and it will continue to induce or contribute to the infringement of the '627 patent unless enjoined by this Court.

34. The infringement of the '627 patent by defendants has been willful.

35. In view of the willfulness of the defendant's infringement of the '627 patent, this case is an "exceptional" case pursuant to 35 U.S.C. § 285.

36. Plaintiffs have been damaged by the defendants' acts in an amount as yet unknown, plaintiffs have been and will continue to be irreparably damaged by the continued acts of the defendants until defendants are enjoined from further infringement of the '627 patent by this Court. Plaintiffs have no adequate remedy at law.

## COUNT II

## VIOLATIONS OF SECTION 43 (A) OF THE LANHAM ACT

37. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-36 above as though fully set forth herein.

38. Count II is an action for trade dress infringement, unfair competition, false designation of origin, false description and misrepresentation arising under Section

43(a) of the Lanham Act, 15 U.S.C. §1125(a).

39. The trade dress of the Ion pen has attained secondary meaning in the mind of the purchasing public.

40. The trade dress of the Ion pen is primarily non-functional in nature.

41. Defendants' unauthorized manufacture, importation, distribution, marketing, offer for sale and/or sale, in interstate commerce of defendants' Snap Pen having trade dress copied from and/or substantially identical to the trade dress of the Ion pen is likely to cause confusion, to cause mistake or to deceive persons into the erroneous belief that defendants' pens are plaintiff Cross' products or that defendants and/or their products are authorized or endorsed by plaintiffs or are connected in some way with plaintiff as to the origin, sponsorship or approval of the defendants' pens. The design of the defendants' pens is confusingly similar, if not substantially identical, to the Ion pen trade dress. Defendants' unauthorized manufacture, importation, distribution, marketing, offer for sale and/or sale, in interstate commerce, of pens having a trade dress substantially identical to the Ion pen trade dress constitutes trade dress infringement, unfair competition, false designations of origin, false descriptions and representations to the effect that defendants' pens are plaintiff's products or that defendants and their products are authorized or sponsored by plaintiff or are connected in some way with plaintiff, and defendants, with knowledge of such falsity, have caused their products to enter into commerce.

42. The defendants' Snap Pen is so similar to the plaintiff's Ion pen that defendants certainly intend to cause confusion among purchasers or to deceive the

public into believing the defendants' pens are the products of or associated with or sponsored by plaintiff.

43. Upon information and belief, defendants have intentionally and willfully copied the Ion pen trade dress in order to capitalize on the uniqueness and goodwill thereof to trade upon plaintiff's reputation.

44. Plaintiff Cross has been damaged by the defendants' acts in an amount as yet unknown. Plaintiff has been and will continue to be irreparably damaged by the continued acts of the defendants until defendants are enjoined and plaintiff has no adequate remedy at law.

**COUNT III**

**VIOLATION OF SECTION 43 (A) OF THE LANHAM ACT**

45. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-44 above as though fully set forth herein.

46. Count III is an action for packaging trade dress infringement, unfair competition, false designation of origin, false description and misrepresentation arising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

47. The trade dress of the Ion packaging is primarily nonfunctional in nature, inherently distinctive and/or has attained secondary meaning in the mind of the purchasing public.

48. Defendants' unauthorized manufacture, importation, distribution, marketing, offer for sale and/or sale in interstate commerce of the Snap Pen in

packaging having a trade dress copied from and/or similar to the trade dress of the Ion packaging is likely to cause confusion, mistake or deception of purchasers and potential purchasers as to the origin, sponsorship or approval of the defendants' pens. The design of the Snap Pen packaging is confusingly similar, if not identical, to the trade dress of the Ion packaging. Defendants' unauthorized manufacture, importation, distribution, marketing, sale and/or use, in interstate commerce, of product packaging having a trade dress substantially identical to the trade dress of the Ion packaging constitutes trade dress infringement, unfair competition, designation of origin, false descriptions and representations to the effect that defendants' pens are plaintiff Cross' products or that defendants and their products are authorized or sponsored by plaintiff or are connected in some way with plaintiff, and defendants, with knowledge of such falsity, have caused their products to enter into commerce.

49. Defendants' packaging for the Snap Pen is so similar to the plaintiff's Ion packaging that defendants certainly intend to cause confusion among purchasers or to deceive the public into believing the defendants' pens are the product of or associated with or sponsored by plaintiff.

50. Upon information and belief, defendants have intentionally and willfully obtained and/or copied Ion packaging trade dress in order to capitalize on the uniqueness and goodwill thereof and to trade upon plaintiff's reputation.

51. Plaintiff Cross has been damaged by the defendants' acts in an amount as yet unknown, plaintiff has been and will continue to be irreparably damaged by the continued acts of the defendants until defendants are enjoined. Plaintiff has no

adequate remedy at law.

## COUNT IV

## UNFAIR COMPETITION IN VIOLATION OF RHODE ISLAND COMMON LAW

52. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-51 above as though fully set forth herein.

53. This cause of action arises under the common law of the State of Rhode Island.

54. Defendants, by their acts, have unfairly competed with Cross and have infringed plaintiff Cross' common law rights in the trade dress of the Ion pen and packaging.

55. Defendants' conduct is likely to cause confusion, mistake, and deception among customers and the public as to the source, origin, sponsorship, affiliation and/or quality of their products, thereby causing loss, damage, and injury to plaintiff and to the purchasing public. Defendants knew, or in the exercise of reasonable care should have known, that their conduct was likely to mislead the public.

56. Defendants' conduct has been willful and intended to cause mistake or to deceive, and in disregard of plaintiff's rights.

57. Plaintiff Cross has been damaged by the defendants' acts in an amount as yet unknown. Plaintiff has been and will continue to be irreparably damaged by the continued acts of the defendants until defendants are enjoined. Plaintiff has no adequate remedy at law.

**WHEREFORE,** A.T. Cross Company and A.T. X. International, Inc. pray for relief as follows:

1. A preliminary and permanent injunction enjoining defendants Proinnovative, Inc. and Edward C. Leand d/b/a Advanced Advertising Products and their officers, agents, servants, employees, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with it, from:

(a) infringement of U.S. Patent No. 6,273,627;

(b) manufacturing, importing, distributing, advertising, promoting, selling or offering for sale the Snap Pen and its packaging and products and/or packaging which are dressed identically to the Ion pen and its packaging or any colorable imitation or facsimile thereof;

(c) engaging in any conduct that tends to falsely represent that, or is likely to confuse, mislead, or deceive purchasers or members of the public to believe that the actions of defendants are connected with plaintiffs, are sponsored, approved, or licensed by plaintiffs, or are in some way connected or affiliated with plaintiffs; and

(d) palming off defendants' products as those of plaintiffs or otherwise committing acts of unfair competition against the plaintiffs by use of plaintiffs' designs and/or trade dress.

2. An order directing defendants, their officers, agents, servants, employees and attorneys, and any and all persons in active concert with them who receive actual notice to:

(a) deliver up for destruction all articles, packaging and artwork in their possession or under their control which bear or incorporate designs which are an infringement, copy, simulation, reproduction or imitation of the plaintiff's trade dress;

(b) send written notification to all of its wholesale customers and distributors for its products marketed in the trade dress complained of herein, advising of the entry of relief awarded herein and requesting that all unsold inventory be returned to defendants.

3. That defendants be ordered to file with this Court and serve upon plaintiffs' counsel within thirty days after entry of judgement, a report in writing under oath, setting forth in detail the manner and form in which defendants have compiled with the injunction.

4. That defendants be ordered to account for all profits realized by them as a consequence of their unlawful acts and infringements alleged herein, and that the amount of profits realized by defendants by reason of its unlawful acts be increased to

a sum not exceeding three times the amount thereof, as provided by law.

5. That damages be awarded to plaintiffs in the full amount plaintiffs have sustained as a consequence of defendants' acts, together with any and all profits of defendants which are attributable to, or arise out of or from such wrongful acts and infringements, trebled where provided by law.

6. That plaintiffs be awarded punitive damages as may be allowed under Rhode Island law.

7. That plaintiffs be awarded all costs, disbursements and plaintiffs' reasonable attorney's fees.

8. That plaintiffs have all other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs demand trial by jury.

Respectfully Submitted,

Dated: January 17, 2006

By [signature]

Gregory L. Benik (GLB-1515)
Robin L. Main (RLM-4222)
HOLLAND & KNIGHT
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
Tel: (401) 751-8500
Fax: (401) 553-6850

Attorneys for Plaintiffs
A.T. CROSS COMPANY and
A.T.X. INTERNATIONAL, INC.

Of Counsel:

Frank J. Colucci
Angelo Notaro
John Zaccaria
Colucci & Umans
218 East 50th Street
New York, NY 10022
(212) 935-5700

J299-319-Complaint.wpd